**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

RICKY BROWN,
ADC #551211                                                                                    PLAINTIFF

V.                           CASE NO. 4:13CV00572 DPM/BD

ANDY SHOCK, et al.                                                                         DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail all objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    Introduction:

Ricky Brown, formerly an inmate at the Faulkner County Detention Center ("Detention Center"), filed this lawsuit under 42 U.S.C. § 1983, alleging that Detention Center officials interfered with his right to access the courts in violation of his first amendment rights.

The remaining Defendants Andy Shock, John Randall, Lloyd Vincent, K. Douglas, and Pamela Carter, have now moved for summary judgment.[1] (Docket entry #44) Mr. Brown has responded and supplemented his response. (#51, #52, #53, #54, #55, #56, #57) For the reasons set forth below, the Court should grant Defendants' motion for summary judgment.

## III.    Facts:

Mr. Brown was booked into the Detention Center on July 22, 2013, for traffic violations and a parole violation for absconding. (#46-1 at pp. 3, 6, & 7) When the parole officer served Mr. Brown with the parole violation warrant, Mr. Brown asked the

---

[1] Earlier, Mr. Brown moved to dismiss his claims against Defendants Rainwater, Jackson-George, Lee, Maher, Strayer, Ferguson, and Brown; and the Court granted the motion. (#12, #14, #17)

officer for information about Arkansas's Act 570. She told Mr. Brown that he could get the information through the jail or from his public defender. (*Id*. at p. 7)

At his parole revocation hearing, Mr. Brown informed the hearing officer that he had not had a chance to review any legal reference material prior to the hearing.[2] (*Id*. at p. 8) From his prior experience with the parole board, Mr. Brown believed that he would receive only a seven-day sentence for violating his parole if he attended the revocation hearing, but a six-month sentence if he waived his hearing. (*Id*. at 8-9)

At his parole revocation hearing, Mr. Brown admitted to absconding. (*Id*. at 7) The hearing officer found that Mr. Brown had violated the terms of his parole and sentenced him to eight months' incarceration in the Arkansas Department of Correction ("ADC"). (*Id*. at 9) Mr. Brown was transferred from the Detention Center to the ADC on September 26, 2013, to begin serving that eight-month sentence. (*Id*. at pp. 8-9)

While Mr. Brown was still at the Detention Center, officers provided him with various addresses, so he was able to send and receive mail, including mail to legal entities. (*Id*. at pp. 33, 39) And on one occasion, Defendant Carter sent a sergeant to the male housing unit to talk to Mr. Brown about his request for a copy of Arkansas's Act 570. (*Id*. at 26-27) In that conversation, Mr. Brown was told that he would have to

---

[2]Under Arkansas Parole Board Policy, a parolee may have counsel present at the revocation hearing and if indigent parolees request it, appointed counsel. Arkansas Parole Board Policy Manuel, § 3.09, http://paroleboard.arkansas.gov/AboutUs/ Documents/policies/APBManual.pdf (last visited Aug. 29, 2014). It is unclear from the record whether Mr. Brown had counsel at his revocation hearing.

specify the particular part of the act that he needed. When he responded that he needed the whole act, he was asked to be more specific because the act was over one hundred pages long. (*Id*. at pp. 26-27)

Under Detention Center policy, an inmate without an attorney must show proof of *pro se* status from a court before he may have access to legal materials. (*Id*. at p. 18, #55 at p. 7) The inmate also must identify what law book he wants so that officers can locate it. (#55 at p. 7)

Mr. Brown alleges that Defendant Carter knew he was without counsel in his misdemeanor case until a September 23, 2013 court appearance. (#46-1 at p. 18) He says that he showed Defendant Douglas paperwork from this Court indicating he was *pro se* in a civil case on or around September 15, 2013.[3] (*Id*. at p. 34) After seeing the paperwork, Defendant Douglas told Mr. Brown she would work on getting him the legal research he had requested. (*Id*.) Mr. Brown did not receive the documents he requested, however, prior to his September 18th revocation hearing or before his transfer from the Detention Center to the ADC on September 26, 2013. (*Id*. at p. 36)

While incarcerated at the Detention Center, Mr. Brown never saw or spoke with Defendant Shock. (*Id*. at p. 17) Mr. Brown saw Defendant Randall only a few times, and spoke to him only once when he asked if he could talk with him. According to Mr.

---

[3]The Court notes that it did not enter its order granting Mr. Brown's motion to proceed *pro se* in *Brown v. Randall et al*., 4:13cv00529-JM until September 18, 2013. (Case No. 4:13cv00529-JM at docket entry #9)

Brown's deposition, after that request, Defendant Randall "just looked at me and shook his head and walked off." (*Id*. at p. 17) Mr. Brown never asked Defendant Vincent about the law library, but Defendant Vincent told Mr. Brown to submit a grievance through the proper channels. (*Id*. at p. 18)

**IV.** **Discussion:**

    **A.** **Standard**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not come forward with enough evidence to establish a necessary element of the case, the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

### B. Sovereign Immunity

Mr. Brown's claims for money damages from the Defendants in their official capacities are barred, of course, by sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989)(holding that a civil litigant cannot recover money damages from a state actor sued in official capacity) Thus, official-capacity claims seeking money from the Defendants should be dismissed based on sovereign immunity.

### C. Access to the Courts

Mr. Brown claims that Defendant Douglas denied him access to courts by denying him access to the law library. (#11 at pp. 1, 4) He also claims that Defendant Carter knew that he did not have legal counsel, but still denied him access to the law library, thereby infringing his right to access the courts. (#27 at p. 2)

An allegation that prison officials impeded access to the courts, standing alone, does not amount to a constitutional violation. This claim requires a plaintiff to show that a defendant's actions kept him from litigating a claim and, by this misconduct, caused an actual injury. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). To show an actual injury, the prisoner must show that a non-frivolous legal claim was "frustrated or . . . impeded." *Id*. Mr. Brown has made neither showing.

Mr. Brown has not established that Defendants Douglas and Carter impeded him from litigating his claims. He stated that Defendant Carter sent an officer to the male

housing unit to talk to him about his request for a copy of Arkansas Act 570. (#46-1 at p. 26) Defendant Douglas, after receiving proof of Mr. Brown's *pro se* status, agreed to try to get Mr. Brown the legal materials he had asked for, but she did not deliver the requested materials prior to Mr. Brown's transfer to the ADC. (*Id*. at pp. 26, 34-36) Even so, Mr. Brown's access-to-courts claim cannot succeed.

At his deposition, Mr. Brown acknowledged that, in spite of the Defendants' actions, he was able to pursue his claims by filing and maintaining lawsuits. (*Id*. at pp. 20-21, 28, 30) Mr. Brown alleges that access to the Act would have alerted him to the fact that he could receive more than a seven-day sentence for his parole violation. He maintains that, had he known he could be sentenced to more than seven days' imprisonment, he would have opted to waive his revocation hearing. Mr. Brown asserts that a waiver would have resulted in a six-month parole revocation sentence, as opposed the eight-month sentence he received. Mr. Brown's reasoning is flawed.

First, Act 570 did not include any information that would have caused him to waive his revocation hearing. He admitted at his deposition that having access to Act 570 would not have actually changed his parole revocation sentence. (#46-1 at p. 14) See PUBLIC SAFETY IMPROVEMENT ACT, 2011 Arkansas Laws Act 570 (S.B. 750).

Second, if Mr. Brown had waived his parole revocation hearing, there is nothing to show that he would have received a six-month sentence. Under Parole Board Policy, a parole violator who is returned to the ADC after waiving a hearing, "shall be *eligible for*

*release consideration after a minimum* of six (6) months." Parole Board Policy at § 3.3, http://paroleboard.arkansas.gov/AboutUs/Documents/policies/APBManual.pdf (last visited Aug. 29, 2014)(emphasis added). Because the policy offered Mr. Brown no guarantee of release after six months, his decision to request a revocation hearing did not necessarily result in a longer sentence than he would have received had he waived the hearing. Accordingly, Mr. Brown has not established that his lack of access to Act 570 resulted in an actual injury.

Mr. Brown also challenges the Detention Center's policy itself, which he says was created by Defendants Shock, Randall, and Vincent. He argues that, under that unconstitutional policy, he was denied access to the law library and, therefore, was denied access to the courts. The Detention Center policy provides:

> In the event an inmate does not have an attorney, they will have reasonable access to any legal materials maintained by this facility in the law library. Inmate must have PRO SE paperwork from the court that he/she is charged out of. If you don't have that form, you will not have access to the law library. If you are PRO SE in a CIVIL hearing, you must have paperwork showing you are PRO SE. You also have to tell us what book you want so we can locate it for you.

(#55 at p. 7)

The Court appointed counsel for Mr. Brown in his misdemeanor criminal case, and he did not receive any greater or lesser sentence as a result of not having access to the law library prior to appointment of counsel. (#46-1 at pp. 31-32) Had Mr. Brown asked for the address of the public defender's office or of a private attorney, Detention Center

employees would have provided them. (*Id.* at p. 33) Further, the lack of legal materials did not prevent Mr. Brown from maintaining his civil lawsuits. (*Id.* at pp. 21, 28)

Mr. Brown has not set out facts showing that Defendants frustrated or impeded his ability to bring his legal claims. See *White*, 494 F.3d at 680 (8th Cir. 2007). For that reason, the Defendants are entitled to summary judgment on this claim.

### D. Legal Mail

Mr. Brown also claims that Defendants Shock, Randall, and Vincent issued an "administrative directive" instructing Detention Center employees to read all outgoing legal correspondence, a violation that Mr. Brown interfered with his right to access the courts. (#11 at p. 3, #46-1 at pp. 21-22) As support for this claim, Mr. Brown points to a grievance he wrote on September 10, 2013, in which he claimed: "Sgt. George informed me per admin-directive we can't seal legal mail, it must be read before being sent." (#55 at p. 21) Defendant Douglas responded to the grievance, stating that all incoming and outgoing mail "has to be searched." (*Id.*)

The grievance is not evidence that Detention Center staff read or opened any legal correspondence addressed to or from Mr. Brown that was marked attorney-client privilege. See *Senty-Haugen v. Goodno*, 462 F.3d 876, 891 (8th Cir. 2006)(citing *Gardner v. Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997)(unsupported assertions in an affidavit cannot defeat a summary judgment motion); *Harrod v. Halford*, 773 F.2d 234, 236 (8th Cir. 1985); *Jensen v. Klecker*, 648 F.2d 1179, 1182–83 (8th Cir. 1981)); see also

*Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984–85 (1974) ("We think it entirely appropriate that the State require [legal mail] to be specially marked as originating from an attorney . . .").

At his deposition, Mr. Brown stated he never saw any of the Defendants reading his outgoing mail, adding that they "left that to the sergeants corporals and [officers] that are under corporal." (#46-1 at p. 21) *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); see also *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997)(holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").

Mr. Brown testified that, while at the Detention Center, he was able to send mail to the public defender's office, the ACLU, and the Department of Justice. He also stated that he had received responses to most of his outgoing mail. (#46-1 at p. 10) Further, he was able to file a complaint and several pleadings with this Court. See *Brown v. Randall*, Case No. 4:13cv00529-JM, docket entries 1-8, 10. Mr. Brown has not come forward with evidence to establish a violation of his right to access the courts through mail.

**E. Policy**

Mr. Brown claims that the following Detention Center policy, which was part of a document entitled "Inmate Rights and Rules of Conduct," violated his constitutional rights:

> Due to the increase of frivolous lawsuits filed by inmates the Arkansas Legislature has recently passed new laws allowing for the increased punishment of inmates filing frivolous lawsuits. FCDC will punish inmates filing frivolous lawsuits to the fullest extent of the law.

(#55 at p. 6) Mr. Brown claims the policy is fraudulent and that Defendants Shock, Randall, and Vincent instituted and posted the policy to discourage him from filing lawsuits.

The policy, while poorly drafted, was not fraudulent. The Arkansas statute referred to in the policy provides for sanctions for inmates who file frivolous lawsuits. See ARK. CODE ANN. §§ 16–106–201 *et seq*. "Frivolous" is defined as "having no reasonable basis in law or fact, or lacking in a good faith legal argument for the extension, modification, or reversal of existing law." ARK. CODE ANN. § 16–106–201(1). Sanctions that can be imposed include an award of attorneys' fees and actual costs not to exceed $2,500 per frivolous cause of action, court costs not to exceed $500, and a civil sanction not to exceed $1,000. ARK. CODE ANN. § 16–106–203. Thus, the notice posted by the Detention Center warning inmates against filing frivolous lawsuits was not fraudulent. *Moore v. Shock*, 4:13CV00594 JLH, 2014 WL 504764 (E.D. Ark. Feb. 7, 2014).

Further, although this issue has not been addressed by the Eighth Circuit, this Court has held the Detention Center's policy warning inmates that it will seek sanctions for frivolous lawsuits does not violate the Constitution. *Id*. The policy did not threaten punishment for filing a non-frivolous lawsuit.

Finally, at his deposition, Mr. Brown admitted that he had not been injured by the policy. He stated that the policy had not prevented him from filing his lawsuits, because "I didn't believe that my suits were frivolous." (#46-1 at p. 28)

### V.     Conclusion:

The Court recommends Defendants Andy Shock, John Randall, Lloyd Vincent, K. Douglas, and Pamela Carter's motion for summary judgment (#44) be GRANTED. All of Mr. Brown's claims should be DISMISSED, with prejudice.

DATED this 2nd day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE